JOSEPH S. THOMAS *et ux. vs.* NEWPORT OIL CORPORATION.

JUNE 13, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

456

ANDREWS, J. This is an action of the case in assumpsit for breach of contract for furnishing fuel oil. The case was tried in the superior court before a justice thereof sitting with a jury, and at the conclusion of the testimony the defendant moved for a directed verdict which was denied. The jury returned a verdict for the plaintiffs in the sum of $1,508.03. Thereafter the defendant filed a motion for a new trial which was denied. The case is before this court on the defendant's exceptions to the denial of its motions for a directed verdict and a new trial.

The pertinent part of the declaration reads as follows: "* * * and plaintiffs allege that during said month of November, A. D. 1953, plaintiffs entered into a contract with defendant whereby defendant promised and undertook to furnish a safe and adequate supply of fuel oil, to be delivered as needed to said dwelling house during the ensuing year, so as to maintain heat in the interior of said dwelling house and thereby prevent the occurrence of any damage or injury thereto which might result from a dropping of the temperature of the interior thereof to a point below freezing * * *."

The facts are not in substantial dispute. The plaintiffs, who owned a house in Middletown, being in need of the services of a certain mechanic who was connected with the defendant corporation decided to take oil from that company. The agent of defendant went to plaintiff Thomas'

store and said he was there to sign him up for oil whereupon said plaintiff signed the following order: "Nov 18 1953 I wish to be placed on the Automatic Fuel Oil Delivery Service of the Newport Oil Corporation for the season 1953-1954. I agree to pay one-half cent (½¢) per gallon above the tank wagon price on date of delivery for a complete oil burner inspection and overhaul, plus emergency service calls during the season." Plaintiff Thomas told this agent "that we are in the habit of closing the house but leaving the heat on." The defendant's agent explained what was meant by the order for "automatic" fuel oil delivery. He said the oil would be delivered without request by the customer and that the need for oil was determined automatically by a system which it employed. There was, however, an attempt by defendant to show that it was not required to make a delivery until plaintiffs called for one.

The order was not placed on file but one of its mechanics went to plaintiffs' house and adjusted the heating system and had an opportunity to find out all that was necessary for the performance of the contract. No oil was delivered and there was no evidence that any attempt was made to deliver it until after the occurrence of the damage hereinafter described.

The plaintiffs went to Florida on December 10, 1953 and about January 21, 1954 defendant received word that their house was flooded with water. Its agent went there and found that the oil tank was empty. He also found that the water in the house had frozen which resulted in flooding causing damage, among other things, to the floors and rugs. The defendant repaired the heating system but declined to pay for new floors and other damage caused by the flooding.

The defendant moved for a nonsuit as well as for a directed verdict. Under our practice the arguments of counsel are not reported, but the remarks of the trial justice in denying the motions indicate that defendant urged that

there was a variance between the pleadings and proof and before us the parties argued that point. The defendant contended before the trial justice and in this court that the contract declared on was one of insurance against freezing and consequent damage. The contract *proved* did not insure against freezing. There was a material variance between the pleadings and proof, and we are satisfied that defendant preserved its right to argue this point here.

The plaintiffs did not ask leave to amend the declaration so as to make the pleadings conform to the proof. They could have done so by merely striking out that part of our above quotation from the declaration following the last comma, namely, "so as to maintain heat in the interior of said dwelling house and thereby prevent the occurrence of any damage or injury thereto which might result from a dropping of the temperature of the interior thereof to a point below freezing." Even in this court they did not ask leave to amend unless their reference to *Cleasby* v. *Reynolds*, 26 R. I. 236, may be construed as an implied request. In that case the court found that there was a variance but that the defendant was not prejudiced thereby and at page 236 concluded: "The fact being undisputed, the count may be amended to conform to it * * *. When this is done the record will conform to the facts and can be relied on in bar of another action for the same cause. Petition for new trial denied. Judgment in accordance with the decision will be entered when the plaintiff shall have amended his special count." Nowhere in its brief or argument did the defendant in the instant case suggest surprise or that it suffered any prejudice whatever by this variance and we can see none.

In *Beaudette* v. *Cavedon*, 50 R. I. 140, the court, at page 144, stated: "Although defendant's contention regarding a variance was correct, in view of the possibility of amendment we ought not to direct a verdict for defendant and exception to refusal so to do is not sustained."

After referring to the fact that no oil had been delivered the trial justice in his charge said: "You have got to decide whether that was a breach of the contract; whether it was their duty to deliver oil in that interval or whether they had a right to sit back and wait until oil was called for having in mind the contentions of the parties." It thus appears that defendant had its claims presented to the jury, although in view of its failures and the testimony of its agents as to the meaning of "automatic" deliveries, it had little if anything to go to the jury on the question of liability.

On its exception to the denial of its motion for a new trial the defendant attacks the allowance for the flooding on the ground that it was not recoverable under the rule of damages for breach of contract. No exception was taken to the charge with reference thereto and it is clear that the award of damages for flooding was not against the law as given to the jury.

All of the defendant's exceptions are overruled. The plaintiffs may amend their declaration to conform to the proof, and when they have done so the case will be remitted to the superior court for entry of judgment on the verdict.

FLYNN, C. J., did not participate in the decision.

*Salvatore L. Virgadamo*, for plaintiffs.

*Sheffield & Harvey, Richard B. Sheffield*, for defendant.